Peter C. Freeman (State Bar No. 100744)
peter@peterfreemanlaw.com
Law Offices of Peter C. Freeman
384 Forrest Avenue, Suite 23 A
Laguna Beach, CA 92651
T: (949) 341-0500   F: (949) 341-0405

Attorney for
NEVA B. FREEMAN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEVA B. FREEMAN, et al., individuals, | CASE NO.: 3:16-cv-03790-RS |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE, WELLS FARGO HOME LENDING, QUALITY LOAN SERVICE CORPORATION, and DOES 1-50 | Date:       September 1, 2016<br>Time:       1:00 p.m.<br>Crtrm.:     A - 15th Floor<br>Judge:      Hon. Richard Seeborg |
| Defendants | Action Filed:   May 17, 2016<br>Trial Date:     None Set |

**TABLE OF CONTENTS**

I. INTRODUCTION...................................................... 1

II. PROCEDURAL BACKGROUND ........................................ 3

 A. PROCEDINGS IN SONOMA COUNTY SUPERIOR COURT ............ 3

 B. PROCEEDINGS IN THIS COURT ................................... 3

III. STATEMENT OF FACTS .............................................. 4

IV. LEGAL AUTHORITIES ............................................... 9

 A. PRELIMINARY INJUNCTION LEGAL STANDARDS ................. 9

 B. PLAINTIFF MEETS THE STANDARDS FOR PRELIMINARY INJUNCTION ................................................... 11

  1. Plaintiff Will Prevail on the Merits ............................ 11

   a. Plaintiff is Entitled to An Accounting ................... 11

   b. Plaintiff Will Prevail on the Breach of the Implied Covenant of Good Faith and Fair Dealing ............... 11

   c. Plaintiff Will Prevail on Breach of Contract .............. 13

   d. Plaintiff Will Prevail on Unfair Business Practices ........ 14

  2. Plaintiff Will Sustain Irreparable Harm ........................ 15

  3. The Balance of Equities Tips in Plaintiff's Favor ................ 16

  4. An Injunction Is In the Public Interest .......................... 18

V. CONCLUSION...................................................... 18

1 **TABLE OF AUTHORITIES**

2 Cases

3 *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). . . . . . . . . 9

4 *Anderson v. Heart Fed. Sav. & Loan Ass'n*, 208 Cal. App. 3d 202, 215, 256 Cal. Rptr.
5 180 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

6 *Ansanelli v. JP Morgan Chase Bank, N.A.*, C 10-03892 WHA, 2011 U.S. Dist. LEXIS
7 32350, 2011 WL 1134451, at *11 (N.D. Cal. Mar. 28, 2011) . . . . . . . . . . . . . . . . . . . . . . 15
8 15

9 *Avila v. Wells Fargo Bank*, 2012 U.S. Dist. LEXIS 100522 (N.D. Cal. July 18, 2012) . . 13,
10 15

11 *Baypoint Mortgage v. Crest Premium Real Estate Investments Retirement Trust* (1985) .
12 168 Cal.App.3d 818, 824-825 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

13 *Becker v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 136183 (E.D. Cal., Dec. 13,
14 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

15 *Biakanja v. Irving*, 49 Cal. 2d 647, 650, 320 P.2d 16 (1958) . . . . . . . . . . . . . . . . . . . . . .15
16 *Bobbins v. Sup. Ct. (County of Sacramento) (1985) 38 Ca1.3d 199, 205* . . . . . . . . . . . .15

17 *Brinker v. JP Morgan Chase*, 2013 U.S. Dist. LEXIS 73384 (N.D. Cal. May 17, 2013) . 10

18 *Butt v. State of California* (1992) 4 Ca1.4th 668,678 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
19 *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 372
20 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

21 *Carolina Pines, Inc., v. Catalina Pines* (1932) 128 Cal.App 84, 89 . . . . . . . . . . . . . . . . 15

22 *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd. (2nd Cir.*
23 *2010) 598 F3d 30, 35* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

24 *Civic Western Corp. v. Zila Industries, Inc.* (1977) 66 Cal. App. 3d 1, 14. . . . . . . . . . . . 11

25 *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2000) 14

26 *Continental Baking Co. v. Katz* (1968) 68 Ca1.2d 517. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

27 *Escano v. Aurora Loan Services, LLC*, No. C 11-6720-MEJ, 2012 U.S. Dist. LEXIS
28 79339, 2012 WL 2061587, at *3 (N.D. Cal. June 7, 2012). . . . . . . . . . . . . . . . . . . . . . . . 11

iii

1 | *Family Record Plan, Inc. v. Mitchell* (1959) 172 Cal.App.2d 235, 242 . . . . . . . . . . . . . . 10

2 | *Gaudin v. Saxon Mortgage Services, Inc.* (N.D.Cal. 2011) 820 F.Supp.2d 1051,

3 | 1053–1054 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

4 | *Gosney v. State of California (1970) 10 Cal.App.3d 921, 924* . . . . . . . . . . . . . . . . . . . . . .15

5 | *House v. Lala,* 214 Cal.App.2d 238, 243, 29 Cal.Rptr. 450 (1963). . . . . . . . . . . . . . . . . 16

6 | *Howard v. Fed. Home Loan Mortg. Corp.*, 2012 U.S. Dist. LEXIS 23933, *6 (E.D. Cal.

7 | Feb. 24, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . 14

8 | *Ingels v. Westwood One Broad. Servs., Inc.,* 129 Cal. App. 4th 1050, 1060 (2005) . . . . . 14

9 | *Klein v. City of San Clemente,* 584 F.3d 1196, 1201 (9th Cir. 2009). . . . . . . . . . . . . . . . . 9

10 | *Leiva-Perez v. Holder* (9th Cir. 2011) 640 F3d 962, 966 . . . . . . . . . . . . . . . . . . . . . . . . .9

11 | *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.,* 887 F. Supp. 1320, 1323

12 | (N.D. Cal. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

13 | *Lozano v. AT & T Wireless Servs., Inc.,* 504 F.3d 718, 731 (9th Cir. 2007) . . . . . . . . . . . . 14

14 | *Penermon v. Wells Fargo Bank, N.A.,* 47 F. Supp. 3d 982 (N.D. Cal. 2014) . . . . . . . . . . . 15

15 | *Perea v. Walgreen Co.,* 939 F. Supp. 2d 1026, 1040 (C.D. Cal. 2013) . . . . . . . . . . . . . . . . . 14

16 | *Perry v. Nat'l Default Servicing Corp.,* No. 10-cv-03167-LHK, 2010 U.S. Dist. LEXIS

17 | 92907, 2010 WL 3325623, at *6 (N.D. Cal. Aug. 20, 2010) . . . . . . . . . . . . . . . . . . . . . . . 14

18 | *Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026,

19 | 1031–1032. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

20 | *Raymond v. Independent Growers, Inc.* (1955) 133 Cal. App. 2d 154, 160 . . . . . . . . . . . . 11

21 | *Rivello v. Journeyman Barber Union* (1948) 88 Cal.App.2d 499, 510 . . . . . . . . . . . . . . 15

22 | *San Pedro Lumber Co. v. Reynolds* (1896) 111 Cal. 588, 596–597. . . . . . . . . . . . . . . . 11

23 | *Shoemaker v. County of Los Angeles (*1995) 37 Cal.App.4th 618, 633 . . . . . . . . . . . . 14

24 | *Singer Mgmt. Consultants, Inc. v. Milgram* (3rd Cir. 2011) 650 F3d 223, 229 . . . . . . . . . 9

25 | *Susilo v. Wells Fargo Bank, N.A.,* 796 F. Supp. 2d 1177 (C.D. Cal. 2011) . . . . . . . . . . 16

26 | *Sutcliffe v. Wells Fargo, N.A.,* 283 F.R.D. 533, 549-53 (N.D. Cal. 2012) .. . . . . . . . . . . . 14

27 | *Tapang v. Wells Fargo Bank, N.A.,* No. 12-CV-02183-LHK, 2012 U.S. Dist. LEXIS 72713,

28 | 2012 WL 1894273, at **4-5 (N.D. Cal. May 23, 2012) . . . . . . . . . . . . . . . . . . . . . . . 11, 9

iv

*West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 796-98, 154 Cal. Rptr. 3d 285 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Whann v. Doell* (1923) 192 Cal. 680, 684 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wigod v. Wells Fargo Bank*, 673 F.3d 547 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . .. 14

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). . . . . . . . . . . . . . . . . . . 9

*Youngblood v. Wilcox 14* (1989) 207 Cal.App.3d 1368, 1375 . . . . . . . . . . . . . . . . . . ... 15

### Constitutions, Statutes and Rules

12 U.S.C. § 2605. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

Cal. Bus. & Prof. Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cal. Civ. Code § 2924 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... 10

Fed.R.Civ.P. 65. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... 1

### Other Authorities

California Judicial Council Jury Instructions (CACI) 325 . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

1
2

## MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

3

### I.    INTRODUCTION

4   Unlike most of the foreclosure cases flooding the calendars of the Courts (and this
5   Court), including the many involving Defendant WELLS FARGO BANK, N.A.,
6   (hereinafter "WFB"or "Wells Fargo") formerly known as Wachovia Mortgage, FSB
7   (hereinafter "Wachovia") and World Savings Bank, FSB (hereinafter "World Savings")
8   this case does not involve a long history of occupancy without any payments, nor a
9   plaintiff who qualified for a loan she could not afford and couldn't pay, nor a residence
10  that has depreciated in value with no equity.  It does not involve a long history of efforts
11  and promises on loan modification procedures.  It does involve a Plaintiff who has
12  owned her home for over twenty years whom WFB is forcing to pay allegedly "past due"
13  payments, which Plaintiff has already paid, by recording a Notice of Default ("NOD")
14  and scheduling a Trustee's Sale.

15  Plaintiff has a long and frustrating history of trying to show Wells Fargo that they
16  are incorrect in their claims that she is deficient on four (4) payments between July, 2010
17  and March, 2012.  Finally, after receiving the Notice of Trustee's Sale in May, 2016,
18  Plaintiff filed a Complaint in the Sonoma County Superior Court alleging exclusively
19  state court claims and obtaining an ex parte Temporary Restraining Order temporarily
20  stopping the Trustee's Sale.  WFB responded with an improper and untimely Notice of
21  Removal[1], bringing the parties before this Court.

22  What this case does involve is a Plaintiff who agreed with World Savings in 2004
23  to have her bi-weekly loan payments directly withdrawn from her checking account on
24  the electronic requests made directly and controlled by World Savings. In October, 2011,
25  after 7 years of  payments, World Savings (by then, Wachovia) claimed that the loan was

26
27  [1] Plaintiffs Motion for Remand will follow shortly.
28

delinquent because of a missed payment. Plaintiff immediately spoke with a Wachovia Representative and sent bank records by fax showing that the payment had been made and deducted from her account. Thus began a history with Wachovia, and later WFB, that resulted in claims that a previous payment in August, 2010 had been missed and that 2 more payments were missed in January, 2012, and March, 2012. In fact, the records of WFB and Plaintiff's Bank show that the payments were made.

Despite Plaintiff's repeated efforts to correct and reconcile her account with WFB, (including offers to pay if she owed more), WFB ignored Plaintiff's efforts to reconcile the account. Instead in March, 2012, WFB began to send Notices of Intent to Foreclose erroneously claiming that Plaintiff had missed 4 payments. WFB asserted then that Plaintiff owed $6,137.30 and $773.78 in late charges. WFB ignored Plaintiff's continuing efforts to reconcile the disputed amounts and regularly sent Notice of Intent letters while continuing to process and receive bi-weekly payments directly from Plaintiff's checking account.

In September, 2015, WFB unilaterally changed Plaintiff's Loan Account Number, stopped the bi-weekly requests for direct payments from Plaintiff's account, demanded that she pay $7,036.97 in alleged past due payments and late fees, and refused to accept any further payments that did not include their wrongfully inflated demand.

In February, 2016, WFB, through Quality Loan Servicing Corporation (hereinafter "Quality Loan") recorded and served a Notice of Default and Election to Sell ("NOD") that demanded $21,420.09 to reinstate, an amount that erroneously included payments that had already been made. The detail of the reinstatement amount asserted that there had been no payments made after July, 2015, when WFB had initiated and received payments until September 1, 2015.

Plaintiff renewed her efforts to prove that her payments had been made, offered to meet with a personal representative of WFB to resolve the dispute, or discuss it with a knowledgeable WFB representative. WFB ignored those requests and efforts. WFB has continued its efforts to foreclose on Plaintiff's home and her substantial equity in it,

-2-

1  because she will not capitulate and pay over $7,000 that WFB demands.  Plaintiff

2  contends that they inflated amount is not due and has already been paid.  An injunction

3  is warranted and necessary to stop the unlawful and improper foreclosure activities of

4  Wells Fargo before further irreparable harm is done.

## II.    PROCEDURAL BACKGROUND

### A.    PROCEEDINGS IN SONOMA COUNTY SUPERIOR COURT

7    Plaintiff filed her Verified Complaint in the Sonoma County Superior Court on

8  May 17, 2016.  On May 25, 2016, after notice to Defendants, Plaintiff sought and obtained

9  an ex parte TRO setting a Hearing for Preliminary Injunction on June 15, 2016.

10 Defendants WFB and Quality Loan were personally served with the Summons,

11 Complaint, and TRO on May 26 and 27, 2016 respectively.

12    Plaintiff filed a First Amended Verified Complaint on June 7, 2016, which was

13 personally served on Defendants WFB and Quality Loan on that day.  Plaintiff's First

14 Amended Verified Complaint ("FAC"), RJN, **Ex A** alleges Causes of Action against WFB

15 and Quality Loan for:  (1) Violations of the Fair Debt Collection Practices Act, including

16 violations of the California Homeowner Bill of Rights ("HOBR");  (2)  Injunctive Relief;

17 (3) Declaratory Judgment;  (4) An Accounting;  (5)  Breach of the Implied Covenant of

18 Good Faith and Fair Dealing;  (6) Breach of Contract;  (7) Negligence;  (8) Negligent

19 Infliction of Emotional Distress; and (9) Unfair Business Practices (§17200 CA Bus &

20 Prof).

21    On June 13, 2016, Plaintiff and WFB stipulated to a continuance of the Hearing for

22 Injunction and the TRO until July 13, 2016.  On June 22, 2016, Quality Loan filed its

23 Declaration of Non Monetary Status ("DNMS") and served it by mail on Plaintiff's

24 counsel.  On July 7, Plaintiff served an Objection to Quality's DNMS by mail on counsel

25 for both Defendants. (ECF Docket # )

### B.    PROCEEDINGS IN THIS COURT

27    On July 6, 2016, Defendant WFB filed and served its Notice of Removal,

28 commencing proceedings in this Court. (Docket #1).  On July 12, Plaintiff filed a

-3-

1 Certificate of Service of Objection to DNMS. (Docket # 7 ). On July 13, Defendant WFB

2 filed a Stipulation Extending Time to Answer (Docket # 8 ) and on July 14 its Declination

3 of Consent to Magistrate Judge (Docket # 9 ). This Application follows.

### III.    STATEMENT OF FACTS

5      Plaintiff, then a single woman, moved into the nearly new home at 1448 Country

6 Manor Drive, Santa Rosa in August, 1995, agreeing to purchase it from its original owner,

7 Alan Schroeder. Plaintiff lived in the home on a contract of sale for 9 years before

8 purchasing it and taking title in March 2004, making all her payments to Schroeder, and

9 he in turn, paid World Savings. Plaintiff Declaration ¶ 3. In 2004, Plaintiff obtained a

10 new loan for $380,000 from World Savings Bank and executed a Promissory Note and

11 Deed of Trust, which were recorded in Sonoma County. FAC ¶ 20, RJN, **Ex A.** Plaintiff

12 has lived continuously in the home for the past 21 years as her only residence. Plaintiff

13 estimates that the home currently has a fair market value of $750,000, providing her in

14 excess of $400,000 equity in the home. Plaintiff Declaration ¶ 26.

15      At the time of the loan in 2004, under the terms of the Promissory Note, Plaintiff

16 agreed to make bi-weekly payments (26 per year) on a program that World Savings

17 recommended, to amortize the loan more quickly. World Savings committed to initiating

18 the ACH payments, relieving Plaintiff from sending or dispatching payments as World

19 Savings agreed to directly obtain money from her checking account.[2] World instituted

20 their bi-weekly demands to Plaintiff's Bank at the very start of the loan. There was no

21 pre-published schedule, and unlike a loan due on the "first of the month", World Savings

22 initiated requests every two weeks on a schedule it set.   Plaintiff Declaration ¶ 8 .

23 World Savings reduced Plaintiff's interest rate by .05% to get her to commit to the

24 program, which benefitted them.

25

26

27      [2]  Plaintiff does not have the Promissory Note nor has WFB provided it to ascertain the exact terms and language.

28

1  Plaintiff had already made timely payments to Schroeder for 9 years, then made
2  payments to World Savings and Wachovia for over six years before any issues surfaced.
3  In October, 2011, Wachovia claimed Plaintiff had missed payments. But, Wachovia
4  continued to request and receive money from Plaintiff's account every two weeks.

5  In October, 2011, Plaintiff was notified that she had missed a payment. Plaintiff
6  immediately contacted Wachovia, spoke to Dwight in Customer Service, and then faxed
7  him records of her bank statements showing that the payments in October, 2011 had been
8  made. Dwight indicated that he would "look into it and someone would get back to
9  her". Plaintiff Declaration ¶9 , **Ex A**.

10  Wachovia did send a form letter acknowledging the correspondence but did not
11  thereafter respond to Plaintiff's proof that she had made those specific payments.
12  Plaintiff Declaration ¶ 10, **Ex B.** Wachovia made no efforts to discuss, meet, or attempt
13  to reconcile their records of Plaintiff's Loan Account with her records showing that
14  payments had actually been made. The bi-weekly withdrawals from Plaintiff's account
15  continued.

16  In March, 2012, without hearing further from Wachovia, Plaintiff began to get
17  Statements and Notices from Wells Fargo, which asserted that Plaintiff had missed loan
18  payments on September 30, 2011, January 9, 2012, and March 19, 2012. Wells Fargo sent a
19  Notice of Intent to Foreclose on March 22, 2012, contending that Plaintiff had missed 4
20  payments in the amount of $6137.30 with $773.78 in late charges. Plaintiff Declaration ¶
21  11, **Ex C.** Plaintiff responded on April 12, 2012 and spoke to a Wells Fargo
22  representative to whom she sent a fax containing additional bank records showing that
23  those payments had been deducted from her account. Plaintiff again asked to meet or
24  directly communicate with someone who could discuss the status of her account with
25  her. Plaintiff Declaration ¶ 12, **Ex D.**

26  After not hearing anything in response to her second fax, on June 14, 2012,
27  Plaintiff again contacted Wells Fargo, speaking with Renee, a Representative in the
28  Research Department. Renee contended that Plaintiff had not made payments for

September 30, 2011, January 9, 2012, or March 19, 2012.  Plaintiff again faxed her Bank Statements to Renee showing that all those payments had been made.  Plaintiff did not receive any response from Renee or anyone else at Wells Fargo, nor did she receive any accounting or information from Wells Fargo.  Plaintiff Declaration ¶ 13, **Ex. E**

While Wells Fargo continued to request and receive payments every two weeks, Plaintiff did not hear anything from Wells Fargo although she continued to receive letters threatening an intent to foreclose for the 4 allegedly missed payments.  Plaintiff Declaration ¶12.  On July 31, 2013, Plaintiff again contacted the Research Department at Wells Fargo and spoke with Erica.  They again discussed the alleged arrearages, specifically with a print out that showed the payments had been received by Wells Fargo.  Plaintiff again faxed bank records to Erica.  (Plaintiff Declaration ¶ 13, **Ex F**).

Throughout 2012, 2013, 2014, and most of 2015, Wells Fargo continued to initiate requests for payment from Plaintiff's account every two weeks and continued to receive payments until September 1, 2015.  Plaintiff also continued to receive monthly statements and bi-weekly Notices that contended she was behind by 4 payments and owed about $7500 in back payments, which she had already paid and provided proof of.  Wells Fargo never refuted or challenged Plaintiff's proof of the payments.  No one ever called from Research or contacted Plaintiff to discuss more specifically the missed payment issues.  Plaintiff Declaration ¶ 15.

Throughout this time period there was a barrage of collection calls from Wells Fargo at Plaintiff's home.  When Plaintiff did speak with a Representative, the person claimed to have no knowledge of her account, her payment history, her records of payment, or her documents disputing the claimed arrearages.  The Representatives had no record of Plaintiff's faxes nor did they see any history of a response from Wells Fargo.  On numerous occasions, Plaintiff requested to speak or meet in person with someone with knowledge of her account with whom she could discuss the receipt of her payments on those four occasions.  Plaintiff repeatedly indicated her willingness to pay any payments that were delinquent.  The regular notices and collection calls continued.

1 | Plaintiff Declaration ¶ 16.

2 On September 28, 2015 Wells Fargo contended that Plaintiff was delinquent and
3 demanded that she remit $7344.79 immediately as past due amounts with late charges.
4 At that point, Wells Fargo had ceased submitting the bi-weekly ACH requests to
5 Plaintiff's bank, and had assigned Plaintiff a new Loan Account number (0482490869).
6 Wells Fargo refused to accept any payment that did not include the allegedly past due
7 amount, $7,344.79. Plaintiff renewed her efforts to reconcile the inaccurate Wells Fargo
8 records, actually contacting and visiting the local Wells Fargo Home Lending Office (600
9 Bicentennial Way, Santa Rosa). A receptionist at that office declined to allow Plaintiff to
10 speak with anyone or to provide any information. Plaintiff Declaration ¶ 17.

11 In February, 2016, Wells Fargo designated Quality Loan as 'Substitute Trustee" to
12 proceed with foreclosure efforts. On behalf of Wells Fargo, Quality Loan recorded a
13 Notice of Default and Election to Sell ("NOD") on February 4, 2016. RJN, **Ex. B**  Just prior
14 to serving and recording the NOD, Quality Loan sent Plaintiff a "Debt Validation Notice"
15 on February 1, 2016 advising Plaintiff that it was "assuming" the principal amount of the
16 debt to be valid in the amount of $327,609. Quality Loan advised Plaintiff to
17 communicate with them if she wished to dispute the amount of the debt or to obtain
18 information to determine its validity. (Plaintiff Declaration ¶ 18, **Ex G** ). Wells Fargo
19 and Quality Loan declared the entire amount of the Loan ($336,967.04) due and payable.
20 Quality Loan also included a Declaration of Compliance (Section 2923.55) from
21 Christopher Smith, a VP of Loan Documentation in South Carolina that was dated
22 February 21, 2013, 3 years before the default alleged in the NOD. RJN, **Ex B.**

23 On February 29, 2016 Plaintiff again reached out to Wells Fargo to attempt to
24 resolve Wells Fargo accounting errors or to determine and understand what she owed
25 and why. Plaintiff spoke with Monica, renewing her request to meet or discuss the loan
26 status, and again faxed the bank statements showing that the payments had been made.
27 Plaintiff also requested an accounting from Wells Fargo (at least the third time she had
28 requested such). Plaintiff was told that she had time to resolve matters and to work

-7-

1  things out as no Trustee's Sale would take place in California until August or September,
2  2016. Plaintiff Declaration ¶ 19-20, **Ex. H.**

3      After 45 days, around April 15, 2016, Plaintiff received a generic Loan History
4  from Wells Fargo. Plaintiff understood those records to show the uninterrupted flow of
5  payments from Plaintiff's Bank account and to corroborate that Plaintiff made payments
6  from her account that were not properly credited to her Loan Account on August 11,
7  2010, October 4, 2011, January 10, 2012, and March 20, 2012 . Plaintiff's Bank Statements
8  for those same months shows that the payments were made as shown in the Wells Fargo
9  History. The records requested did not show any calculation of payments and late fees
10 claimed by Wells Fargo. (Plaintiff Declaration ¶ 21, **Ex I**).

11     Despite Plaintiff's repeated efforts to correct and reconcile the accounting and her
12 offers to pay any amount that was, in fact, owing, including those accruing from October,
13 2015 to present, Quality Loan recorded a Notice of Trustee's Sale on May 9, 2016, setting
14 the Trustee's Sale for June 6, 2016.   RJN, **Ex C**

15     Plaintiff has now submitted a Completed Request for Assistance to Wells Fargo.
16 Plaintiff still stands prepared to pay the amount of the past due payments from October,
17 2015 to present, which she believes total about $25,000. Because Wells Fargo has not
18 provided any specific or detailed accounting, Plaintiff is not certain what fees, interest,
19 and other charges Wells Fargo may have added to her Loan Account. Coupled with the
20 dispute over the earlier payments, there is such uncertainty that an accounting is
21 required to determine what is owed and why. Plaintiff Declaration ¶ 21,

22     Plaintiff should not have to pay amounts that were erroneously charged as interest
23 and late fees by Wells Fargo nor increased fees or costs associated with their wrongful
24 foreclosure efforts. The materials provided by Wachovia and Wells Fargo have been
25 confusing and misleading, as has information provided over the telephone by Wachovia
26 and Wells Fargo representatives. Plaintiff Declaration ¶21. Without an Accounting, as
27 prayed for in the Complaint, Plaintiff cannot determine what is appropriately due.
28     In addition, as shown by Plaintiff's Declaration, Wachovia and Wells Fargo have

1   engaged in a continuing and consistent pattern of refusing to acknowledge and
2   communicate on the payment issues or to provide any detailed account information as to
3   what payments, fees, and charges are owed. Despite numerous phone calls on collection
4   efforts, no Wells Fargo Representative ever attempted to talk about Loan Modification or
5   other foreclosure alternatives before February 2, 2016. Plaintiff's first communications
6   with a Wells Fargo representative about foreclosure alternatives came two months after
7   the NOD had already been recorded, in April, 2016. Plaintiff Declaration ¶ 19.

8                    **IV.    MEMORANDUM OF POINTS & AUTHORITIES**
9          **A.    PRELIMINARY INJUNCTION LEGAL STANDARDS**

10          The standard for issuing a TRO is identical to the standard for issuing a
11   preliminary injunction. *Tapang v. Wells Fargo Bank, N.A.*, No. 12-CV-02183-LHK, 2012
12   U.S. Dist. LEXIS 72713, 2012 WL 1894273, at **4-5 (N.D. Cal. May 23, 2012) *(Koh, J.)*
13   (Tapang) (citing cases); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F.
14   Supp. 1320, 1323 (N.D. Cal. 1995). A plaintiff seeking a preliminary injunction must
15   establish that "he is likely to succeed on the merits, that he is likely to suffer irreparable
16   harm in the absence of preliminary relief, that the balance of equities tips in his favor,
17   and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*,
18   555 U.S. 7, 20 (2008). The party seeking the injunction bears the burden of proving these
19   elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). The issuance of
20   a preliminary injunction is at the discretion of the district court. *Alliance for the Wild*
21   *Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

22          A preliminary injunction may be granted even if it cannot be determined with
23   certainty that the moving party is more likely than not to prevail on the merits when "the
24   costs outweigh the benefits of not granting the injunction." *Citigroup Global Markets, Inc.*
25   *v. VCG Special Opportunities Master Fund Ltd.* (2nd Cir. 2010) 598 F3d 30, 35; *Singer Mgmt.*
26   *Consultants, Inc. v. Milgram* (3rd Cir. 2011) 650 F3d 223, 229—"A 'likelihood' does not
27   mean more likely than not"; see *Leiva-Perez v. Holder* (9th Cir. 2011) 640 F3d 962, 966—
28   requirement of likelihood of success for stay of removal in deportation appeal does not

1 | require showing that success on merits is "more likely than not"]

2 | And, it is not necessary for a Plaintiff to show that they will prevail on all causes of
3 | action. *Brinker v. JP Morgan Chase*, 2013 U.S. Dist. LEXIS 73384 (N.D. Cal. May 17, 2013) –
4 | finding a right to injunctive relief warranted where there was a likelihood of prevailing
5 | on two of numerous causes of action.

6 | In determining whether to grant a Preliminary Injunction, the Court considers the
7 | probability of Plaintiffs' success on the merits of their case and whether a greater injury
8 | to Plaintiff will result in refusing the injunction than will result to Defendants if the
9 | injunction is granted. *Continental Baking Co. v. Katz* (1968) 68 Cal.2d 517. In *Katz*, the
10 | Supreme Court made it clear that the balancing of the potential injuries to the respective
11 | parties is the critical test with respect to the determination to grant or deny the
12 | injunction:

13 |
14 |
15 |
> "[In] the last analysis, the trial court must determine which party is
> the more likely to be injured by the exercise of its discretion ... and
> it must then be exercised in favor of that party." Id. (quoting *Family
> Record Plan, Inc. v. Mitchell (1959)* 172 Cal.App.2d 235, 242

16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
The application of this standard to the facts of this case compels a finding
that the injunction should issue. Not only is there more than a reasonable probability
that Plaintiff will prevail on several of the causes of action on the merits of her case, but
there is little likelihood that Defendants will be harmed in the slightest degree by the
issuance of the injunction. The Court is being asked only to enjoin Defendants from
temporarily continuing with a foreclosure sale, which does not comport with *California
Civil Code § 2924*, and is against public policy.

24 |
25 |
26 |
27 |
28 |
Defendants will not be harmed by the enjoining of this conduct because
they are not entitled to proceed and continue with wrongfully causing Plaintiff injury
and the loss of her unique and irreplaceable real property. Based on the facts set forth
above and a further consideration of the law below, the Court should enjoin current
foreclosure sale activities to ensure the Plaintiff does not suffer enormous harm and

-10-

1 | irreparable injury.

2 |     **B.**    **PLAINTIFF MEETS THE STANDARDS FOR A PRELIMINARY**
3 |            **INJUNCTION**

4 |         **1.**    **Plaintiff Will Prevail on the Merits**

5 |              **a.**    **Plaintiff is Entitled to an Accounting:**

6 |       Plaintiff's Fourth Cause of Actions seeks an Accounting.  An accounting action is

7 | governed by the general principles of equity, including the necessity of establishing the

8 | inadequacy of legal remedies *San Pedro Lumber Co. v. Reynolds* (1896) 111 Cal. 588, 596–

9 | 597.  When accounts are so complicated that an ordinary legal action demanding a fixed

10 | sum is impracticable, an action in accounting is appropriate.  *Civic Western Corp. v. Zila*

11 | *Industries, Inc.* (1977) 66 Cal. App. 3d 1, 14.

12 |       A cause of action in equity for an accounting requires (1) a relationship between

13 | the parties; and (2) that an unknown balance is due that cannot not be ascertained

14 | without an accounting, the means of which are within the knowledge of the defendant.

15 | *Whann v. Doell* (1923) 192 Cal. 680, 684.  The plaintiff is not required to state facts that are

16 | peculiarly within the knowledge of the defendant.  *Raymond v. Independent Growers, Inc.*

17 | (1955) 133 Cal. App. 2d 154, 160.

18 |       The FAC and Plaintiff's Declaration establish that there is a dispute about what

19 | monies are owed to Wells Fargo under the Promissory Note and Deed of Trust.  Plaintiff

20 | has demonstrated efforts to seek resolution.  Wells Fargo has stubbornly stood on its own

21 | accounting, without seemingly reviewing it or Plaintiff's bank statements to ascertain

22 | what is, in fact owed.  Wells Fargo has demonstrated its refusal to attempt resolution and

23 | instead seeks to force compliance by inappropriately resorting to non-judicial

24 | enforcement of its secured rights.  An accounting is an appropriate equitable remedy

25 | which Plaintiff is entitled to.

26 |            **b.**    **Plaintiff Will Prevail on Breach of the Implied**
27 |                 **Covenant of Good Faith & Fair Dealing**

28 |       Plaintiff's Fifth Cause of Action alleges the tortious breach of the contracts entered

into between Plaintiff and World Savings in March, 2004, the Promissory Note and the Deed of Trust.   Under California law, a claim for breach of the implied covenant under contract law is necessarily based on the existence of an underlying contractual relationship. Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.  The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith." *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 371–372.

In essence, the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which frustrates the other party's rights to the benefits of the contract. *Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1031–1032.   The elements include a contract, the plaintiff's performance or excused performance of all things she was to do, defendant's interference, and resulting harm. *CACI 325.*

While Plaintiff acknowledges that she lacks the specifics of the terms of the Promissory Note, or any supplemental documents and agreements, she does recall that World Savings encouraged her to utilize their bi-weekly payment program in which they were responsible to initiate payment requests to the borrower's bank electronically and to keep records of the payments.  World, Wachovia, and later Wells Fargo had the responsibility to timely request payments and accurately account for funds they removed from Plaintiff's account while documenting the funds they had received.  Plaintiff had the right to rely on them to properly request and to account for the funds they had received.

Plaintiff expected the benefit of their proper initiation of payments and proper accounting for what they received.  And she had a right to fair and reasonable communication and resolution of any disputes about what was owed.  Plaintiff was expected to maintain the money in her account to cover the requests when presented.

1  The responsibilities that World asked for and accepted contr5actually carried the
2  responsibility to communicate and account to reconcile records.  As alleged by Plaintiff,
3  Wells Fargo failed to:  (1) timely request payments; (2) properly account for funds
4  received; (3) communicate with Plaintiff over any discrepancies in the records; (4) not
5  inappropriately or unfairly claim a breach or default; (5) not inappropriately seek to
6  enforce the security agreement; and (6) respond to her inquiries about status and
7  amounts owed as both the law and RESPA require[3] .

8       Wells Fargo, following four direct contacts from Plaintiff did nothing to respond
9  to her inquiries and questions.  RESPA requires an explanation to those reasons the
10  borrower thinks the account is in error. See *Escano v. Aurora Loan Services, LLC,* No. C 11-
11  6720-MEJ, 2012 U.S. Dist. LEXIS 79339, 2012 WL 2061587, at *3 (N.D. Cal. June 7, 2012).
12  Wells Fargo has continually failed and refused to do that.

13       In addition, Wells Fargo, after wrongfully concluding that a breach had occurred,
14  unilaterally demanded that disputed amounts be immediately paid as a condition of
15  maintaining the loan, then changed the account number while refusing to accept further
16  payments less than the unreasonably and inaccurately calculated amount.  Wells Fargo
17  declared a default, inaccurately engaged in negative credit reporting, and adamantly
18  refused any mechanism to consider, discuss, or resolve the reasonable dispute.

19       Although Wells Fargo will undoubtedly assert that such claims are barred by
20  HOLA, its predecessor, World Savings encouraged and promoted this repayment
21  method, and in the process, took on additional responsibilities not part of any traditional
22  lending practices.   Plaintiff's state law claims only incidentally affect lending and
23  challenge the conduct of stalling, avoiding requests, and refusing to initiate and accept
24  payments. See *Avila v. Wells Fargo Bank,* 2012 U.S. Dist. LEXIS 100522 (N.D. Cal. July 18,
25
26
27       [3] Plaintiff has not alleged any actionable violation of RESPA, 12 U.S.C. 2605, but its
provisions set reasonable standards that should be adhered to in assessing conduct.
28

1 | 2012).

### c.   Plaintiff Will Prevail on Breach of Contract Claims

Plaintiff will prevail on her claims that Wells Fargo breached the terms of the Promissory Note. World Savings had contractual responsibilities in connection with the loan re-payment program they urged, including responsibilities to timely initiate and account for payments on Plaintiff's loan. They failed in those responsibilities, improperly demanded an immediate payment in an erroneous amount and then interfered with Plaintiff's efforts to continue making payments on her loan account when they changed the loan number. They refused Plaintiff's efforts to reconcile any claims of breach that Wells Fargo had under the terms of the Note. Their refusal to accept an amount that did not include monies she had had already paid, requiring double payments is also a breach of the terms of the Note.

At this preliminary stage of the proceedings, when Plaintiff does not possess the documents necessary to assert her contract claims, it would be in appropriate to deny Plaintiff relief while Wells Fargo controls the documents that will allow an exploration of what provisions have been breached.

### d.   Plaintiff Will Prevail on Unfair Business Practice Claims

Cal. Bus. & Prof. §17200 concerns unfair competition and prohibited activities and states that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice." *Cal. Bus. & Prof. Code § 17200.* Each prong is a separate and distinct theory of liability. *Lozano v. AT & T Wireless Servs., Inc.,* 504 F.3d 718, 731 (9th Cir. 2007). In order to state a claim, a plaintiff must identify an underlying statute that Defendant violated. *Ingels v. Westwood One Broad. Servs., Inc.,* 129 Cal. App. 4th 1050, 1060 (2005) (no § 17200 liability "for committing 'unlawful business practices' without having violated another law"). A business practice is "unlawful," in violation of the California Unfair Competition Law (UCL), if it violates another state or federal law; the UCL "borrows" violations of other laws and treats them as independently actionable. *Perea v. Walgreen Co.,* 939 F. Supp. 2d 1026, 1040 (C.D. Cal. 2013).

-14-

1  Here as in *Penermon v. Wells Fargo Bank, N.A.*, 47 F. Supp. 3d 982 (N.D. Cal. 2014),

2  Plaintiff has alleged numerous violations of the HOBR, including §2923.55 and §2924.17,

3  as well as alleging numerous instances of transgressions of RESPA that will support her

4  cause of action for unfair business practices. And those statutory violations will entitle

5  Plaintiff to relief under the Ninth Cause of Action.

6  **e.** **Plaintiff Will Prevail On Claims for Negligence and**

7  **Negligent Infliction of Emotional Distress**

8  Plaintiff acknowledges that typically a lender owes no duty of care to a borrower

9  unless the borrower exceeds its role as a mere lender of money. However, Plaintiff has

10 alleged through the active and direct involvement that World Savings contractually

11 undertook in the bi-weekly payment plan, that it, and later Wachiovia and Wells Fargo

12 became more that the typical lender and developed a fiduciary like duty to actively

13 participate in the process of handling and correspondingly accounting for Plaintiff's

14 money. At a minimum this was "beyond the domain of the usual money lender"

15 (*Ansanelli v. JP Morgan Chase Bank, N.A.*, C 10-03892 WHA, 2011 U.S. Dist. LEXIS 32350,

16 2011 WL 1134451, at *11 (N.D. Cal. Mar. 28, 2011) triggering the six factor test to

17 determine whether the lender owes a duty of care:

18
19  "[1] the extent to which the transaction was intended to affect the plaintiff, [2]
    the foreseeability of harm to him, [3] the degree of certainty that the plaintiff
20  suffered injury, [4] the closeness of the connection between the defendant's
    conduct and the injury suffered, [5] the moral blame attached to the defendant's
21  conduct, and [*37] [6] the policy of preventing future harm."
    *Biakanja v. Irving*, 49 Cal. 2d 647, 650, 320 P.2d 16 (1958).
22
23  Plaintiff asserts that the application of this six-pronged test will resolve in her favor, permit

24 the finding that Wells Fargo owed her a duty a care, and that the duty was clearly breached as

25 Wells Fargo ignored statutory duties under the HOBR and RESPA in the handling of Plaintiff's

26 loan and in improperly instituting foreclosure proceedings. Such transcends this case into one

27 where the lender does owe a duty of care which was breached with clearly resulting harm. *Avila v.*

28 *Wells Fargo Bank*, 2012 U.S. Dist. LEXIS 100522 (N.D. Cal. July 18, 2012)

-15-

In addition,

> "The obligation of the beneficiary to provide the trustor with an accurate accounting of the amounts due to cure a default is governed by statute." *Anderson v. Heart Fed. Sav. & Loan Ass'n,* 208 Cal. App. 3d 202, 215, 256 Cal. Rptr. 180 (1989). Section 2924c specifies that trustor may have "the legal right to bring [her] account in good standing by paying all of [her] past due payments plus permitted costs and expenses within the time permitted by law." § 2924c(b)(1). "Compliance with this provision necessarily requires that the beneficiary provide accurate information in response to an inquiry by the trustor." *Anderson*, 208 Cal. App. 3d at 216. In Anderson, the court found that "the burden is placed on [the beneficiary] by sections 2924 and 2924c to inform [the trustor] correctly about the amounts 'then due' on the obligations properly noticed in the notice of default and the foreclosure costs. This information is in the possession of the beneficiary. [The trustor] is under no obligation to second-guess the amount." Id. *Susilo v. Wells Fargo Bank, N.A.*, 796 F. Supp. 2d 1177 (C.D. Cal. 2011)

## 2.    Plaintiff Will Sustain Irreparable Harm

Wells Fargo has clearly manifested its intent to foreclose Plaintiff's equity in her home at 1448 Country Manor Drive with its "Notice of Default" served on Plaintiff and Recorded on February 4, 2016 and its "Notice of Trustee's Sale recorded and served on May 4, 2016. RJN ¶ and Plaintiff Decl. ¶ & Exh. A. This Court recognizes that loss of a home through foreclosure constitutes irreparable harm. See *Tapang*, 2012 U.S. Dist. LEXIS 72713, at **7-8; 2012 WL 1894273, at **4-5 (N.D. Cal. May 23, 2012), citing *Perry v. Nat'l Default Servicing Corp.*, No. 10-cv-03167-LHK, 2010 U.S. Dist. LEXIS 92907, 2010 WL 3325623, at *6 (N.D. Cal. Aug. 20, 2010). Plaintiff will also suffer irreparable harm in the absence of preliminary relief in the loss of substantial equity in the home and by Wells Fargo's further disparagement of her credit reports. Plaintiff Decl ¶ 22

## 3.    The Balance of Equities Tips in Plaintiff's Favor

The Ninth Circuit has adopted a sliding scale approach to preliminary injunctions in which an injunction may issue "where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.' " *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir.

1  2011) (citing *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir.
2  2000)). *Howard v. Fed. Home Loan Mortg. Corp.*, 2012 U.S. Dist. LEXIS 23933, *6 (E.D. Cal.
3  Feb. 24, 2012).

4         For purposes of determining a request for injunctive relief, the Court should
5  consider whether Plaintiff is likely to suffer greater injury from denial of the injunction
6  than the Defendants are likely to suffer if it is granted. *Shoemaker v. County of Los Angeles*
7  (1995) 37 Cal.App.4th 618, 633.  The court's determination  must be guided by a "mix" of
8  the potential-merit and interim-harm factors; the greater the plaintiffs showing on one,
9  the less must be shown on the other to support an injunction. *Butt v. State of California*
10  (1992) 4 Ca1.4th 668,678.

11         While the issuance of an injunction is in the sound discretion of the court, the
12  court is required to exercise its discretion in favor of the party most likely to be injured.
13  *Rivello v. Journeyman Barber Union* (1948) 88 Cal.App.2d 499, 510;  *Gosney v. State of*
14  *California (1970)* 10 Cal.App.3d 921, 924. Where Plaintiff can show that she will suffer
15  irreparable damage unless the Defendants are restrained pending trial, the relief sought
16  should be granted. *Carolina Pines, Inc., v. Catalina Pines* (1932) 128 Cal.App 84, 89;
17  *Gosney, supra*, at 924. Unless the unlawful conduct of Defendants is enjoined by this
18  Court, Plaintiff will risk losing her home of about 21 years.

19         The granting of injunctive relief is proper where the proponent of such relief faces
20  far greater harm from denial of injunction than faced by the opponent from its issuance.
21  *Baypoint Mortgage v. Crest Premium Real Estate Investments Retirement Trust* (1985) 168
22  Cal.App.3d 818, 824-825; *Youngblood v. Wilcox 14* (1989) 207 Cal.App.3d 1368, 1375.
23  Injunctive relief is appropriate where someone will be badly hurt in a way that cannot be
24  later repaired.

25         In considering a request for injunctive relief, the court must exercise its discretion
26  "in favor of the party most likely to be injured." If denial of an injunction would result in
27  great harm to the Plaintiff, and the Defendants would suffer little harm if it were granted,
28  then it is an abuse of discretion to fail to grant injunctive relief. *Bobbins v. Sup. Ct. (County*

1  *of Sacramento)* (1985) 38 Cal.3d 199, 205.  Plaintiff would suffer a greater injury if the

2  injunction is not issued whereas, in sharp contrast, Defendants would suffer minimal or

3  no harm if the injunction is issued.

4          **4.      An Injunction Is In the Public Interest**

5          The clear import of the enacted legislation in the HOBR and RESPA is that

6  homeowners have protection in their efforts to protect their homes in the non-judicial

7  foreclosure process.  Where it can be shown that, as here, the lender has failed to adhere

8  to the dictates of the statutory provisions, and, as a result a homeowner faces a

9  foreclosure process where they have not had accurate information about the loan

10 reinstatement amount and the Trustee has relied on a clearly out-of date statement of

11 compliance with §2923.55[4], injunctive relief as envisioned by the statute is clearly in the

12 public interest.

13          **V.      CONCLUSION**

14         Plaintiff has established that she is likely to succeed on the merits of her claims,

15 that she will suffer irreparable harm in the absence of preliminary relief, that the balance

16 of equities tips in her favor and that an injunction is in the public interest.  Plaintiff has

17 shown that she meets the applicable criteria for preliminary injunctive relief.  Therefore

18 Plaintiff respectfully requests that this Application be granted and that an injunction

19 issue to stop the foreclosure activities at Plaintiff's home.

20 July 20, 2016                                    Respectfully submitted,

21                                                  LAW OFFICES OF PETER C. FREEMAN

22
                                                   By: __/s/ Peter C. Freeman_____
23                                                 Attorney for Plaintiff
                                                   NEVA B. FREEMAN
24

25  _____

26         [4] *Avila v. Wells Fargo Bank*, 2012 U.S. Dist. LEXIS 100522 (N.D. Cal. July 18, 2012)
    found a three year gap, as here, between contact and default, as insufficient compliance
27  with §2923.5

28

## CERTIFICATE OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 384 Forest Avenue, Suite 23 A, Laguna Beach, CA 92651.

On July 20, 2016 I served the following document(s) described as **MEMORANDUM OF POINTS & AUTHORITES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

*Served By Means Other than Electronically Via the Court's CMECF System:*

*Attorneys for Defendant Quality*
*Loan Service Corporation:*

Daniel J. Goulding, Esq.
Julie O. Molteni, Esq.
QUALITY LOAN SERVICE CORPORATION
411 Ivy Street
San Diego, CA 92101
Tel.: (619) 645-7711 I Fax: (619) 568-3518
Email: dgoulding@qualityloan.com
jmolteni@qualityloan.com

X        **BY MAIL:** I am readily familiar with the firm's practice of collection and processing correspondence by mailing. Under that same practice it would be deposited with U.S. Postal Service on that same day with postage fully prepaid in Santa Rosa, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration is executed in Laguna Beach, California on July 20, 2016.

_/s/ Peter C. Freeman_____