1

2

3

4

5

6                     UNITED STATES DISTRICT COURT

7                    NORTHERN DISTRICT OF CALIFORNIA

8

9    NEVA B. FREEMAN,                      Case No.  16-cv-03790-RS
              Plaintiff,
10
                                           **ORDER GRANTING MOTION TO**
11       v.                                **REMAND**

12   WELLS FARGO BANK, N.A., et al.,

13            Defendants.

14

15                          **I. INTRODUCTION**

16        Plaintiff Neva B. Freeman and defendants Wells Fargo Bank, N.A. ("Wells Fargo") and

17   Quality Loan Service Corporation ("Quality Loan") are locked in dispute over four bi-weekly

18   mortgage payments Freeman insists automatically deducted from her account.  Frustrated but

19   undeterred by the bank's reluctance to see the light, Freeman sued in Sonoma County Superior

20   Court.  Wells Fargo then removed, asserting Quality Loan—who is non-diverse—fraudulently was

21   joined to defeat jurisdiction.  Drawing reasonable inferences in Freeman's favor, Wells Fargo fails

22   to carry its heavy burden to show she lacks a basis for her claims against Quality Loan.  As

23   complete diversity is lacking, Freeman's motion to remand to the Sonoma County Superior Court

24   must accordingly be granted.  Pursuant to Civil Local Rule 7-1(b), this matter is suitable for

25   disposition without oral argument, and the September 8, 2016, hearing will be vacated.[1]

26

27   _____

     [1] The hearings on plaintiff's motion for a preliminary injunction and defendants' motions to
28   dismiss will also be vacated.

**II. FACTUAL BACKGROUND**[2]

On March 12, 2004, plaintiff Neva B. Freeman entered into a "Pick-A-Payment" ("PAP") loan agreement with World Savings Bank, FSB ("World Savings").  The loan was memorialized in a promissory note, secured by a deed of trust, and afforded Freeman $380,000 for a property in Santa Rosa, California.  Around 2007, World Savings changed its name to Wachovia Mortgage, FSB, and two years after the name change, Wachovia was acquired by Wells Fargo.  See Not. of Removal, Exs. D, E.

Freeman's note "instruct[s]" the lender "to withdraw the amount of each biweekly payment from the deposit account on each due date without any further instructions from [Freeman]."  Pl.'s Request for Judicial Notice ("RJN") Ex. 2.  In accordance with this provision, on or around March 2004, automatic clearinghouse ("ACH") payments began deducting directly from Freeman's checking account.

In November 2011, Wachovia contacted Freeman asserting she had missed a few payments.  As the automatic withdrawals had never ceased, Freeman obtained her bank records and faxed them to "Dwight" at Wachovia.  Dwight assured Freeman he would check her records, cross-reference them against theirs, and get back to her on the status of the alleged missed payments.  Dwight, unfortunately, never ended up getting back to Freeman, despite her efforts repeatedly to speak to or meet with someone from Wachovia.

Wachovia, and subsequently Wells Fargo, began sending Freeman regular notices of intent to foreclose, invoking the four missed payments Freeman insists they actually received.  Meanwhile, Wells Fargo continued to process and receive bi-weekly ACH payments from Freeman's checking account.

_____

[2] The factual background is based on the averments in the complaint, which are assumed to be true for the purpose of assessing whether joinder was proper.  *See Thomas v. Aetna Health of Cal., Inc.*, No. 1:10–cv–01906–AWI–SKO, 2011 WL 2173715, at *5 (E.D. Cal. June 2, 2011) ("In ruling on a motion for remand where fraudulent joinder is alleged, a court must evaluate the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of fact in favor of the plaintiff.").

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In 2012, Freeman renewed her efforts to speak with someone in person and contacted

2 Renee in Wells Fargo's Research Department.  She again obtained monthly statements from her

3 bank showing all regular mortgage payments had been made, though two payments had to be

4 "presented by ACH twice before money was taken from the account."  Compl. ¶ 29.  Freeman

5 faxed the records to Renee at her request, and Renee assured her she would research the

6 discrepancy.  Renee, however, did not call Freeman back, nor did anyone else at Wells Fargo.  The

7 delinquency notices and bi-monthly payments continued unabated, but the amount allegedly past

8 due slowly increased as the lender kept adding additional late fees.[3]

9    The lenders began calling Freeman on a regular basis in 2011 using automatic dialers and

10 voice mail messages.  Every now and then, Freeman would explain the alleged error to a live

11 representative and seek information as to whom she could speak or at which branch she could see

12 someone in person.  Freeman also requested her account records from Wells Fargo, sought to deal

13 with a single consistent individual, and demanded, in vain, that the unwarranted collection calls be

14 stopped.

15    In October 2015, Wells Fargo changed Freeman's account number, stopped processing her

16 ACH payments, and refused her offers to pay the bi-weekly amounts by check, credit card, or

17 cashier's check.  Wells Fargo further demanded Freeman pay $7,036.97, an alleged erroneous

18 "past due" amount, in addition to payments for the months the bank refused to accept her

19 mortgage payments.  When Freeman declined to heed these demands, Wells Fargo declared the

20 entire loan balance due, an act Freeman now contends amounts to a breach of the loan agreement.

21    On February 1, 2016, defendant Quality Loan sent Freeman a notice indicating it

22 "assumed" the valid amount of the debt to be $327,609.  *See* Dkt. No. 7.  It also told Freeman she

23 had thirty days to dispute the debt's validity, which she did later on in the month.  On February 4,

24 2016, Wells Fargo recorded a substitution of trustee, inserting Quality Loan in place of Golden

25

26 ───────────────────

[3] Freeman avers Wachovia and Wells Fargo may have been applying current payments to amounts

27 they claimed were past due, rendering the current payments late so they allegedly could claim an additional late fee.

28

West Savings Association Service Company.  Quality Loan then recorded a notice of default and election to sell, initiating non-judicial foreclosure of Freeman's home.

Freeman avers Martha Sanchez, a Quality Loan employee, robo-signed the notice of default, and failed to comply with California Civil Code sections 2923.55 and 2924.17.  Freeman specifically contends Quality Loan spurned the requirements for personal contact before recording the notice, and relied on a three-year old declaration of compliance in preparing and serving the notice.  Freeman further asserts she was never told she could request certain information from the defendants, including a copy of her deed of trust and her payment record with the bank.

Freeman contacted a Wells Fargo representative named Monica after receiving the notice of default, who took Freeman's information and directed her to the Customer Care and Recovery Department.  Freeman faxed the department a letter on February 29, 2016, detailing her personal hardships, and providing her bank records to dispel any claim she was delinquent or in default under her loan agreement.  Monica advised Freeman the past due amount was $22,734.61, but could not tell Freeman how that amount had actually been calculated.  Freeman asked to meet personally with a Wells Fargo representative to resolve the accounting issue.  Monica apparently demurred and told Freeman she could not make any further payments on the loan.

On March 2, 2016, a Wells Fargo Home Mortgage representative wrote to acknowledge Freeman's inquiry, but indicated the lender needed some time to respond.  Quality Loan was acting as Wells Fargo's agent at this time, but allegedly failed to check in with Wells Fargo to learn of Freeman's complaint or obtain the documents she forwarded.  In April 2016, Wells Fargo responded to Freeman's inquiry, sending an eight-page summary of her payments, and directing her to contact the Home Preservation Department.  Freeman avers the response ratified her belief that both Wachovia and Wells Fargo had made errors.

On May 9, 2016, Quality Loan recorded a notice of trustee's sale, setting a date for the auction to proceed on June 6, 2016.  Freeman avers Quality Loan failed independently to investigate the specific amount owed or to check with Wells Fargo to determine its state of communication with the borrower.  Freeman insists if Wells Fargo properly credited her payments

United States District Court
Northern District of California

she would not in fact be deficient, and she is "ready to make payments that are *properly* in arrears and to participate in an accounting."  Compl. ¶ 49 (emphasis added).  The notice of default and notice of trustee sale contain erroneous amounts in Freeman's eyes, amounts she insists Quality Loan never investigated or verified, thereby violating the California Civil Code.

Freeman commenced suit in Sonoma County Superior Court on May 17, 2016, asserting claims for: (1) violation of the Homeowner's Bill of Rights ("HBOR"), Cal. Civ. Code §§ 2923.55, 2923.7, 2924c, 2924.17; (2) declaratory relief; (3) injunctive relief; (4) an accounting; (5) breach of the covenant of good faith and fair dealing; (6) breach of contract; (7) negligence; (8) negligent infliction of emotional distress; and (9) violation of California's Unfair Competition Law ("UCL"),[4]  Cal. Bus. & Prof. Code § 17200 et seq.  Quality Loan filed its declaration of non-monetary status on June 22, 2016, and served Freeman by mail on June 23, 2016.  Freeman timely served objections to Quality Loan's non-monetary status on July 7, 2016, and re-filed those objections after Wells Fargo removed this action on July 6, 2016.

### III. LEGAL STANDARD

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a).  Accordingly, removal jurisdiction exists where a case filed in state court presents a federal question or involves diversity of citizenship and meets the statutory amount in controversy.  *See* 28 U.S.C. §§ 1331, 1332.  Courts strictly construe the removal statute against finding federal subject matter jurisdiction, and the defendant bears the burden of establishing the basis for removal.  *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009).  Where doubt exists regarding the right to remove an action, it should be resolved in favor

---

[4] Freeman's briefing indicates she no longer is pursuing the claims for declaratory relief, an accounting, or negligent infliction of emotional of distress.  Further, as to Quality Loan, she is pursuing only the violations of California Civil Code sections 2923.55 and 2924.17, and the derivative claims for injunctive relief and violation of the UCL.  As to Wells Fargo, Freeman presses only the claims for violation of the Homeowner's Bill of Rights, an injunction, breach of the covenant of good faith and fair dealing, breach of contract, negligence, and violation of the UCL.

CASE NO. 16-cv-03790-RS

United States District Court
Northern District of California

of remand to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

Although complete diversity is required under § 1332, district courts may ignore the fraudulent joinder of non-diverse defendants in determining whether diversity jurisdiction exists. *See Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009). Fraudulent joinder "is a term of art" that "does not reflect on the integrity of plaintiff or counsel." *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983). Joinder is fraudulent "[i]f the plaintiff fails to state a claim against a resident defendant, and the failure is obvious according to the settled rules of the state." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (quoting *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).

In determining whether a removed claim is viable, courts typically "look only to a plaintiff's pleadings." *Ritchey*, 139 F.3d at 1318. When assessing whether joinder was proper, however, courts may go "somewhat further" by allowing a defendant to present additional facts demonstrating joinder was fraudulent. *See Ritchey*, 139 F.3d at 1318. "There is a presumption against finding fraudulent joinder," and defendants who assert it "carry a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). "A claim of fraudulent joinder should be denied if there is any possibility that the plaintiff may prevail on the cause of action against the in-state defendant." *Knott v. Caliber Home Loans Inc.*, No. CV 15–4752 PA (JPRx), 2015 WL 3932668, at *2 (C.D. Cal. June 26, 2015).

## IV. DISCUSSION

Wells Fargo is a citizen of the state of South Dakota, but Quality Loan and Freeman hail from California. Complete diversity is therefore lacking unless Quality Loan can be ignored for the purpose of assessing jurisdiction. To that end, Wells Fargo insists Quality Loan is a nominal party fraudulently joined to defeat jurisdiction. Neither argument is availing.

### A. Quality Loan is Not a Nominal Party.

Quality Loan filed a declaration of non-monetary status on June 22, 2016. Such filings are permitted where "the trustee maintains a reasonable belief that it has been named in the action or

United States District Court
Northern District of California

1  proceeding solely in its capacity as trustee, and not arising out of any wrongful acts or omissions

2  on its part in the performance of its duties as trustee." Cal. Civ. Code § 2924l(a).  If an objection

3  is not served "within the 15-day objection period, the trustee shall not be required to participate

4  any further."  *Id.* § 2924l(d).

5       Here, Wells Fargo removed this action prior to expiration of the fifteen-day window.  As

6  non-monetary status was not perfected, Quality Loan cannot be considered a nominal party.  *See,*

7  *e.g.*, *Boggs v. Wells Fargo Bank, N.A.*, No. C 11–2346 SBA, 2012 WL 2357428, at *3 (N.D. Cal.

8  June 14, 2012) ("Because the removal occurred less than fifteen days after Golden West filed its

9  declaration of non-monetary status, Golden West had not yet been transmuted into a nominal party

10  *at the time of removal*.").  In any event, Freeman asserts claims targeting Quality Loan's

11  performance as trustee, and timely objected to Quality Loan's declaration of non-monetary status.

12       **B. Wells Fargo Has Not Shown Quality Loan Was Fraudulently Joined.**

13       Wells Fargo insists the complaint "is directed entirely at Wells Fargo's conduct" and fails

14  to "identify anything Quality itself did or did not do that would support a cause of action."

15  Remand Opp'n at 4:15–19.  Not so.

16       Freeman avers Quality Loan violated sections 2923.55 and 2924.17 of the California Civil

17  Code.  Section 2923.55 provides mortgage servicers, mortgagees, trustees, beneficiaries, and

18  authorized agents may not record a notice of default until they satisfy certain requirements.  *See*

19  Cal. Civ. Code § 2923.55(a).  First, they must send the borrower "[a] statement that the borrower

20  may request" copies of the "promissory note or other evidence of indebtedness," the deed of trust

21  or mortgage, any assignment of the borrower's deed of trust, and "the borrower's payment history

22  since the borrower was last less than 60 days past due."  *Id.* § 2923.55(b)(1)(B)(i)-(iv).  If the

23  mortgage servicer satisfies the requirements of section 2923.55, they must wait 30 days after

24  making initial contact with the borrower in accordance with section 2923.55(b)(2), or after

25  satisfying the due diligence requirements designed to ensure servicers attempt to make contact

26  with the borrower.  *Id.* § 2923.55(a)(2), (f).  Section 2924.17 provides "a declaration or affidavit

27  filed in any court relative to a foreclosure proceeding shall be accurate and complete and

28

CASE NO. 16-cv-03790-RS

supported by competent and reliable evidence." *Id.* § 2924.17(a).  It further provides a mortgage servicer, before filing a notice of default, "shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information." *Id.* § 2924.17(b).

Here, Freeman asserts she was never given notice she could request the above information. She further avers Quality Loan spurned the personal contact requirements, relied on a three-year old declaration of compliance in preparing and serving the notice, and failed independently to investigate the specific amount owed or to check with Wells Fargo to determine the state of the loan.  Freeman may not ultimately prevail on her alleged HBOR violations, but "[t]he standard is not whether plaintiffs will actually or even probably prevail on the merits." *Knott*, 2015 WL 3932668 at *2 (internal quotation mark omitted).  Instead, joinder is proper where there is a "possibility" they will do so, and Freeman meets that standard here.

Wells Fargo's lone rejoinder is to argue the conduct Freeman highlights is privileged under the California Civil Code.  *See* Cal. Civ. Code § 2924.  "[C]ourts ordinarily do not consider," however, "a non-diverse defendant's defenses on the merits in determining whether that defendant's joinder was fraudulent." *Boggs v. Wells Fargo Bank, N.A.*, No. C 11–2346 SBA, 2012 WL 2357428, at *2 (N.D. Cal. June 14, 2012) (internal quotation marks omitted).  Indeed, where such defenses are invoked, "it cannot be said that the plaintiff's failure to state a claim against the [non-diverse] defendant is obvious according to the settled rules of the state."[5] *Moore v. Wells Fargo Bank, N.A.*, No. 2:16-566 WBS CKD, 2016 WL 3091087, at *6 (E.D. Cal. June 2, 2016) (internal quotation marks omitted).  At bottom, drawing all reasonable inferences in Freeman's favor, Wells Fargo simply has not shown Quality Loan's joinder was fraudulent.

---

[5] In any event, Freeman includes allegations directed to establishing malice, which theoretically could defeat the asserted privilege.  She specifically avers Quality Loan acted with reckless disregard of her rights by using a dated and factually ineffective declaration of compliance.

# V. CONCLUSION

Wells Fargo has failed to carry its heavy burden to show Quality Loan was fraudulently joined.  Complete diversity is thus lacking and Freeman's motion to remand must accordingly be granted.[6]  As Freeman is "ready to make payments that are properly in arrears and to participate in an accounting," the parties are encouraged to explore their state court options for alternative dispute resolution.

**IT IS SO ORDERED**.

Dated: August 31, 2016

RICHARD SEEBORG
United States District Judge

United States District Court
Northern District of California

[6] In light of this disposition, Freeman's alternative argument regarding the amount-in-controversy need not be reached.  Additionally, since this Court lacks jurisdiction, Freeman's motion for a preliminary injunction and defendants' motions to dismiss need not be addressed.